UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
DIANDRA RIVERA and JEANETTE VEGA,

                              Plaintiffs,

      -against-

FINANCIAL ASSET MANAGEMENT
SYSTEMS, INC.

                              Defendant.
-------------------------------------------------------------------X

Case No.: _____

**COMPLAINT AND JURY DEMAND**

      Plaintiffs DIANDRA RIVERA and JEANETTE VEGA bring suit against Defendant debt collector FINANCIAL ASSET MANAGEMENT SYSTEMS, INC. ("FAMS") for its violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

      In summary, FAMS violated the FDCPA by 1) contacting family members of Ms. Rivera under the pretext of seeking contact information for Ms. Rivera (which FAMS had) for the purpose of embarrassing Ms. Rivera to pressure Ms. Rivera to call FAMS and to pressure her for payments; 2) sending an email in connection with the collection of a debt without providing mandatory disclosures such as, *inter alia*, identifying themselves as a debt collector; 3) sending a debt collection letter stating, without qualification, that they would enter into a repayment agreement on terms set by Ms. Rivera, but then refusing to abide by a repayment agreement sought be Ms. Rivera and co-obliger Ms. Vega and confirmed by FAMS acceptance of the first payment; and 4) entering into an oral repayment agreement with Ms. Vega, confirmed by FAMS acceptance of the first payment in the agreement, which would cease further debt collection activity, but then refusing to comply with the terms of the agreement and instead forwarding the account back to the creditor or to a subsequent debt collector without, on information and belief,

disclosing the settlement agreement. As the form email and the form letter stating (falsely) and without qualification that they would accept a repayment plan with terms set by the consumer, appear, by their boilerplate nature, to be standard forms sent to the public at large and not limited to Ms. Rivera. Therefore, Plaintiffs allege this form email and form letter violate, in addition to the FDCPA, N.Y. Gen. Bus. Law § 349. This summary is provided for convenience, and is not meant to limit the full scope of claims as articulation in the full complaint below.

## JURISDICTION AND VENUE

1. The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq*. Jurisdiction of the Court arises under 28 U.S.C. § 1331 in that this dispute involves predominant issues of federal law, the FDCPA. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Declaratory relief is available pursuant to 28 U.S.C. 2201 and 2202.

2. Venue in this District is proper because all or a substantial part of the events or omissions giving rise to their claims occurred in Kings County, New York.

## PARTIES

3. Plaintiff Diandra Rivera (hereinafter "Ms. Rivera") is an individual residing in Kings County, New York.

4. Plaintiff Jeanette Vega (hereinafter "Ms. Vega") is an individual residing in Kings County, New York.

5. Defendant FAMS a foreign corporation, organized under the laws of the State of Georgia, with its principal place of business at 1967 Lakeside Pkwy STE 402

2

Tucker, Georgia, 30084. It may be served through Melanie Norvell, Esq., Registered Agent, C/O Bonis Kyle & Buich LLC, 53 Perimeter Center East 3RD, Atlanta, Georgia, 30340.

6. Defendant FAMS engages in business in New York. This suit arose out of said Defendant's business in New York.

7. FAMS is a debt collection company that sought to collect a putative student loan from Plaintiff Diandra Rivera on behalf of Sallie Mae/Navient.

## STATEMENT OF FACTS

8. Between 2011 and 2012, Ms. Rivera took out over $100,000 in student loans through Sallie Mae ($50,000 private loans, $60,000 from the Department of Education), in order to finance her education, further her career, and improve her living situation. Ms. Rivera's mother, Ms. Vega, co-signed the loan.

9. In August of 2012, Ms. Rivera suffered an accident that left her temporarily disabled and severely compromised her ability to pay off her student loans.

10. Ms. Rivera's medical condition worsened, resulting in surgery in October of 2014 and lengthy physical therapy. She had limited mobility and was unable to find work, which made paying off her putative student loan impossible. By summer of 2015, she was receiving between eight and ten collection daily calls from Navient, Sallie Mae's loan servicing operation. She attempted to file for disability-based adjustments for her private loans, which were repeatedly denied.

11. In September of 2015, Ms. Rivera sought pro-bono consultation from the paralegal Zamara Edwards. Ms. Rivera gave Navient Ms. Edwards's contact information, and Navient repeatedly said they had lost it and continued to contact Ms. Rivera instead. In October of 2015, Ms. Rivera sent Navient a Cease and Desist, which they ignored, continuing to call Ms. Rivera

3

and, eventually, her family members.

12. Ms. Rivera was verbally harassed by Navient several times, as was Ms. Vega, who began receiving calls at work and on her own cell phone. Navient claimed to be monitoring Ms. Rivera's social media accounts as well.

13. In December of 2015, Ms. Rivera began receiving legal counsel from Johnson Tyler. She gave Navient his phone number, and asked them to contact her attorney in the future instead of her; Navient agreed to do so, but called Ms. Rivera again within the week, and then called Ms. Vega as well, in January of 2016.

14. In March of 2016, and within one year of the filing of this action, Ms. Rivera began receiving calls from the number 866-271-2049, which is FAMS's toll-free number [Exh B]; Ms. Rivera's stepmother, the wife of Ms. Rivera's estranged father, also received at least one call from a debt collector about the student loan debt.

15. On March 28, 2016 Ms. Rivera received her initial written communication from FAMS. [Exh A] The subject line of the message stated: "Personal And Confidential Communication from FAMS for DIANDRA N RIVERA". The body of the email itself states that "By providing the last four-digits of your SSN to access the attached PDF document, you confirm your authorization for FAMS to communicate with you via email."

16. However, despite the March 28, 2016 email being the initial written communication from FAMS to Ms. Rivera, nothing in the email indicated that that email was from a debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, a disclosure required by 15 U.S.C. § 1692e(11), nor the disclosures required by 1692g(a).

17. After being duped into consenting to have FAMS communicate with her via email, Ms.

4

Rivera was able to open the attached encrypted PDF attachment [Exh. B]. The PDF attachment does explain that Ms. Rivera's "defaulted private credit student loan(s) referenced has/have been placed with Financial Asset Management Systems, Inc. (FAMS)", and that "NAVIENT indicates that your loan has defaulted and has contracted FAMS to work with you to resolve your debt." But this was after the initial communication (the email), where FAMS did not identify itself as a debt collector, and after Ms. Rivera had been required to authorize FAMS to communicate with her by email without knowing why FAMS was contacting her in the first place.

18. Also in March 2016, and within one year of the filing of this complaint, Ms. Rivera's uncle Louis Fillion, who lives in Puerto Rico, received a call from FAMS asking him for Ms. Rivera's phone number. As can be seen in the letter sent to Ms. Rivera informing her that her debt had been shifted from Navient to FAMS [Exh B], FAMS was in possession of a significant amount of information about Ms. Rivera, including the amount of money she owed, her physical address, and her email address; given that Ms. Rivera needed to use the last four digits of her social security number to access the encrypted PDF, FAMS most likely also had access to that. It thus seems incredibly unlikely that they would not be in possession of Ms. Rivera's phone number, and that they would then need to contact Ms. Rivera's uncle, in Puerto Rico, in order to find or confirm it.

19. Ms. Vega called the number the FAMS representative had left and asked why they had contacted Mr. Fillion; they claimed he was a reference on the loan, which was not the case.

20. Ms. Rivera's grandmother, Sara Muñiz, also received a phone call from FAMS in March 2016, and within one year of the filing of this action. Ms. Muñiz is 80 years old and has a heart condition severe enough to require surgery and a pacemaker. She received the call at her nursing home in Puerto Rico: the caller spoke to her in Spanish with an American accent, and asked Ms.

5

Muñiz to confirm Ms. Rivera's address. Navient had sent Ms. Rivera letters to that address in the past, and FAMS was clearly in possession of it, using it on both the email sent to Ms. Rivera on March 28, and on the attached PDF letter, as well as further communications with her in May [Exh C, Exh D]. Again,

21. Clearly, the caller to Ms. Muñiz wasn't seeking to confirm Ms. Rivera's address, just like the caller to Mr. Fillion wasn't really seeking to find out Ms. Rivera's phone number. The person speaking to Ms. Muñiz told her that her granddaughter "was in a lot of trouble," and that "in order for him to help her [Ms. Rivera], he needed her [Ms. Muñiz] to help him." These are not statements necessary or likely to produce information about a loved one's address: they sound suspicious and potentially threatening. Unsurprisingly, it was at that point that Ms. Muñiz hung up out of fear.

22. While Ms. Rivera is not certain, believes that FAMS may have also called her estranged father.

23. Ms. Rivera, who had tried to keep her student loan debt private, now had to call her ailing grandmother and explain the situation; their relationship, which had previously included regular phone calls and texts, has since deteriorated due to Ms. Rivera's shame. Ms. Rivera also remains concerned for the well-being of her octogenarian grandmother, living in fear that Ms. Muñiz might be contacted by debt collectors again, which could aggravate her heart condition.

24. As with the call to Mr. Fillion, the call to Ms. Muñiz used as a pretext the contact information for Ms. Rivera – which FAMS had and was using – but instead to embarrass Ms. Rivera in front of her family, to put pressure on Ms. Rivera to call FAMS in order to cease possible additional calls to family members, and ultimately to put pressure on Ms. Rivera to pay the putative debt. It was a very abusive if effective debt collection technique as Ms. Rivera and

her mother, co-account holder did indeed call FAMS to attempt to have them stop calling their family members.

25. FAMS was not contacting Ms. Rivera's family members for the purpose of obtaining contact information. FAMS had contact information for Ms. Rivera that it knew was current. Navient provided the contact and account information to FAMS when Navient forwarded to account to FAMS for collection. Navient had previously been in regular contact with Ms. Rivera, calling her often on the same number FAMS was now seeking. FAMS knew it had the correct phone number for Ms. Rivera because, in addition to being provided the number by Navient, Ms. Rivera's voicemail message says, "You have reached Diandre Rivera." The address listed on the letter FAMS used in the emailed letter had the correct address for Ms. Rivera. FAMS knew Ms. Rivera was receiving FAMS' emailed letter because, as discussed further below it duped Ms. Rivera to provide consent to FAMS to communicate with Ms. Rivera by email in attempts to collect the putative debt.

26. On May 26, 2016, Ms. Rivera received another email from FAMS. [Exh C]. The attached, encrypted PDF stated that FAMS would "accept an arrangement of [Ms. Rivera's] choosing that will enable [her] to successfully resolve [her] debt in an amicable and affordable manner." [Exh D]. This is in contrast to the language in the March 27 letter, which stated: "There are many affordable repayment options that are available to you at this time. Currently, you are approved for a greatly reduced and discounted balance as well as a reduced interest rate program. Both options have significant financial benefits for you. If these options are not readily affordable to you, FAMS will work with you on a repayment plan that works within your budget." [Exh B].

27. Also found in the May 26 letter was the statement: "This will allow you the time that you

7

need to pay within your financial means until you are ready to reduce your debt through a discounted balance or a reduction of your current interest rate to .001%".

28. On July 27, 2016, Ms. Vega spoke with a representative from FAMS in an attempt to come to a mutually agreeable payment plan for Ms. Rivera's debt. Ms. Vega was told that FAMS was willing to accept payments of as little as $5.00 per month until Ms. Rivera is able to afford a higher monthly payment. This statement was consistent with prior representations by FAMS, including the assurances that "FAMS will work with you on a repayment plan that works within your budget" [Exh B] and that FAMS would "accept an arrangement of [Ms. Rivera's] choosing that will enable [her] to successfully resolve [her] debt in an amicable and affordable manner." [Exh D].

29. On August 12, 2016, Ms. Vega made a $50 payment to FAMS via FAMS' online payment portal. Ms. Vega expected that the payment would signify her acceptance of FAMS' July 27, 2016 offer to accept payments of as little as $5.00 per month until Ms. Rivera's financial situation improved.

30. As per the July 27, 2016 agreement, Ms. Vega attempted to make a subsequent $50 payment in September of 2016. However, Ms. Vega was unable to access FAMS' online portal to submit the payment. After multiple attempts to discern the source of the problem, Ms. Vega learned that FAMS was no longer servicing the loan, and that the account was transferred to a firm called Weltman, Weinberg and Reis ("WWR"). To date, WWR has refused to recognize the July 27, 2016 payment agreement.

31. Had FAMS kept its word, the account would have been in repayment, instead of (stressful) debt collection activities continuing.

32. On information and belief, FAMS returned the account to Navient and/or forwarded it to another debt debt collector without disclosing the repayment agreement made with Ms. Vega.

33. Ms. Rivera made multiple attempts to confirm the FAMS agreement, but to no avail. FAMS now maintains that no agreement was made during the July 27, 2016 phone conversation.

34. FAMS has inflicted damages on Ms. Rivera. Ms. Rivera suffered severe emotional harm herself. She has had chest pains consistent with panic attacks, cries regularly, sleeps poorly, and feels like she is not safe in her own home. It is especially painful for her because the student loans she took out were meant to improve her circumstances, not destroy them – Ms. Rivera was seeking an education, and through it professional and personal advancement. She has instead faced harassment, emotional turmoil and family strife.

## COUNT # 1:
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

35. Ms. Rivera repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

36. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see also Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

37. Congress designed the FDCPA to be enforced primarily through private parties – such as

plaintiff – acting as "private attorneys general." See S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

38. The obligation Defendants alleged to be owed by Ms. Rivera is a "debt" as defined by 15 U.S.C. § 1692a(5) because it was a student loan incurred primarily for family, personal, or household purposes.

39. Ms. Rivera is a "consumer" as defined by 15 U.S.C. § 1692a(3) because she was alleged to owe a "debt", specifically a direct student loan.

40. Defendant FAMS is a "debt collector" as defined in 15 U.S.C. § 1692a(6) because Ms. Rivera was alleged to owe a debt, the student loan, to a third-party (Navient), and the Defendant made debt collection letters and sent debt collection letters and emails seeking to collect on the putative student loan.

41. FAMS's actions, as enumerated in the statement of facts, constitute an attempt to collect a debt or were taken in connection with an attempt to collect a debt within the meaning of the FDCPA. By way of example and not limitation Defendant violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: communicating, in connection with the collection of any debt, with any person other than the consumer; use any false, deceptive, or misleading representation or means; (2) The false representation of the character, amount, or legal status of any debt or compensation which may

10

be lawfully received; the threat to take any action, and actually taking that action, that cannot legally be taken; the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer; the failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector; and use unfair or unconscionable means; failure to timely provide the disclosures required by 15 U.S.C. § 1692g(a).

42. FAMS inflicted damages upon Ms. Rivera in the manner described in the statement of facts. FAMS is liable to Plaintiff for actual damages, statutory damages of up to $1,000 pursuant to 15 U.S.C. § 1692k, and reasonable attorney's fees and costs.

**COUNT # 2: NEW YORK GENERAL BUSINESS LAW SECTION 349 ET SEQ.**

43. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

44. New York General Business Law Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state…"

45. An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h).

46. As enumerated in the Statement of Facts above, Defendants violated N.Y. Gen. Bus. Law § 349 et seq. by using deceptive acts and practices in the conduct of their businesses, and their conduct has a broad impact on consumers at large.

47. As the form email and the form letter stating (falsely) and without qualification that they would accept a repayment plan with terms set by the consumer, appear, by their boilerplate nature, to be standard forms sent to the public at large and not limited to Ms. Rivera. Further, the boilerplate telephone calls to family members under the pretext of seeking contact information also appears to be a standard practice and consumer oriented.

48. Therefore, Plaintiffs allege this form email and form letter violate, in addition to the FDCPA, N.Y. Gen. Bus. Law § 349.

49. Defendants committed the above described acts willfully and/or knowingly.

50. Defendants' wrongful and deceptive acts caused injury and damages to Plaintiff.

51. As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 et seq, Plaintiff suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble and punitive damages, and costs and attorney's fees.

## JURY DEMAND

52. Ms. Rivera demands a trial by jury.

## PRAYER

53. WHEREFORE, Plaintiff asks for judgment against Defendant for the following:

    a. The above referenced relief requested;

    b. Statutory damages against Defendant under the FDCPA up to $1,000.00 pursuant to 15 U.S.C. § 1692k (FDCPA);

    c. Actual, exemplary, and punitive damages;

    d. And injunction under GBL 349 to enjoin misconduct in the fuute;

    e. Attorney fees and costs;

    f. A declaration that Defendants violated the FDCPA as alleged;

    g. Prejudgment and post judgment interest as allowed by law;

    h. General relief;

    i. All other relief, in law and in equity, both special and general, to which plaintiff may be justly entitled.

Dated: Brooklyn, New York
March 7, 2017

Respectfully submitted,

*/s/ Ahmad Keshavarz*

Ahmad Keshavarz
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:   (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com