UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DIANDRA RIVERA and JEANETTE VEGA,  :
:
          Plaintiffs,  :
:
        v.  : **DECISION & ORDER**
: 17-CV-1295 (WFK)
FINANCIAL ASSET MANAGEMENT  :
SYSTEMS, INC.,  :
:
          Defendant.  :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:** By Complaint filed on March 7, 2017, Diandra Rivera and Jeanette Vega ("Plaintiffs") bring this action against Defendant Financial Asset Management Systems, Inc. ("Defendant") alleging Defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and New York Gen. Bus. Law § 349 *et seq.* in attempts to collect a debt from Plaintiffs. Plaintiffs and Defendant now make cross motions for summary judgment, arguing they are entitled to judgment as a matter of law. For the reasons stated below, the Court grants both motions for summary judgment in part and denies them in part.

## BACKGROUND AND PROCEDURAL HISTORY

The Court finds the following facts from the parties Local Rule 56.1 Statements, declarations, and other evidence submitted in support of the motions, to be undisputed or construed in the light most favorable the non-moving party. Where facts in a party's Rule 56.1 Statement are supported by citations to evidence and denied by conclusory statements without citations to conflicting evidence, the Court finds such facts to be true. E.D.N.Y. Local Rules 56.1(c)–(d).

Plaintiffs successfully applied for student loans with third-party Navient on December 19, 2010, August 24, 2011, June 8, 2012, and June 18, 2012. Pls.' Rule 56.1 Statement ¶ 21, ECF No. 65 ("Pl. St."). The student loans were taken out on behalf of Ms. Rivera and Ms. Vega, her mother, co-signed the loans. Def. Rule 56.1 Statement ¶ 5, ECF No. 62-1 ("Def. St."). After an injury to Ms. Rivera, Plaintiffs were locked out of making payments on the student loan. Pl. St.

¶¶ 23–27.  On March 25, 2016, Ms. Rivera's debt was transferred from Navient to Defendant.  *Id.* ¶ 32.

Defendant is a debt collector, as defined by 15 U.S.C. § 1692a(6).  Def. St. ¶ 2.  Defendant, at the relevant time period, had approximately 200 employees and over 100,000 accounts.  Pl. St. ¶ 8; Def.'s Rule 56 Counter-Statement ¶ 8, ECF No. 75 ("Def. Counter-Statement").  When receiving an account, Defendant's practice is to send a collection letter to the consumer and, at the same time, call the numbers provided by the original creditor, including phone numbers for "references" submitted as part of the original loan application.  Pl. St. ¶¶ 10–15.  Additionally, between January 1, 2014 and March 18, 2018, it was Defendant's practice to regularly send letters to consumers stating Defendant would "accept an arrangement of your choosing that will enable you to successfully resolve your debt in an amicable and affordable manner."  *Id.* ¶ 66.  Defendant further told consumers it would "work with you on a repayment plan that works within your budget."  *Id.* ¶ 67.

### A. Phone Calls to Plaintiffs' Family

After receiving Ms. Rivera's account, on March 26, 2016, Defendant called the number identified for Ms. Vega.  Def. St. ¶ 13.  Defendant then called the number identified for Ms. Rivera on March 28, 2016.  Pl. St. ¶ 34.  When Ms. Rivera did not answer, Defendant noted her voicemail included her identifying herself by her full name.  *Id.*[1]

Later on March 28, 2016, Defendant's agent called Ms. Rivera's grandmother, Sara Muniz.  Def. St. ¶ 16.  Defendant proffers two recordings of the phone call with Ms. Muniz (the "Muniz Call"), while Plaintiffs proffer an affidavit by Ms. Muniz.  *Id.* ¶ 17; Affidavit of Sarah Muniz ¶ 3, ECF No. 67-10 ("Muniz Aff.").  Plaintiffs and Defendant offer substantively different

---

[1] Defendant denies having received Ms. Rivera's full name from her voicemail but admits to receiving her "first and last name on the voicemail."  Def. Counter-Statement ¶ 34.

versions for the Muniz Call.  *Compare* Def. St. ¶ 18, *with* Muniz Aff. ¶ 3 (citing to attached transcript).

Defendant presents recordings of the Muniz Call, wherein Ms. Muniz asks who the caller needs to speak with before hanging up.  Def. St. ¶¶ 17–18.  The first recording identified by Defendant includes the beginning of the call, where Defendant's agent determines Ms. Muniz speaks Spanish, while the second recording includes the end of the call where Ms. Muniz hangs up on the Spanish-speaking agent.  *Id.*  Plaintiffs take the position the recordings adduced by Defendant do not include the entirety of the call, relying on an affidavit by Ms. Muniz.  Pls.' Reply in Supp. of Pls.' Mot. for Summ. J. at 2, ECF No. 73 ("Pl. Reply").  According to Ms. Muniz, Defendant's agent told her: "your granddaughter is in trouble and I need to help her," and "in order for me . . . to help her, I need for you to help me."  Muniz Aff. ¶ 3 (citing to attached transcript).

After speaking with Ms. Muniz, Defendant called Ms. Rivera's uncle, Luis Fillon, in Puerto Rico.  Pl. St. ¶ 35.  Mr. Fillon had been included as a "reference" in Ms. Rivera's original loan application to Navient.  *Id.* ¶ 36.  Defendant's agent requested to speak to Ms. Rivera.  Ex. I to Decl. of Ahmad Keshavarz in Opp'n to Def.'s Mot. for Summ. J. ("Keshavarz Decl.") at 3:14–5:15, ECF No. 67-9 ("Phone Trans.").  They also stated they were "trying to reach out to [Ms. Rivera] with regards to a personal business of hers.  She has this number down as a reference in order to get in contact with her."  *Id.* at 4:8–12.  After speaking with Defendant's agent, Mr. Fillon contacted Ms. Rivera, upset she had given Defendant his number.  Pl. St. ¶ 42.  Ms. Rivera then called Defendant and stated they "cannot call anybody from my family or relatives in Puerto Rico right now.  Effective now."  *Id.* ¶ 51.

3

### B. Letters and Calls to Plaintiff

On March 28, 2016, Defendant sent its first written communication, an email, to Ms. Rivera. *Id.* ¶ 54. The initial email is Defendant's standard initial communication with consumers. *Id.* ¶ 55. The body of the initial email does not identify Defendant as a debt collector. *Id.* ¶ 56. Defendant's disclosure it is a debt collector is accessible only if the consumer clicks a link to open a secure PDF and enters the last four digits of their social security number. *Id.* ¶ 58. The email states "[o]ur records indicate that we have your authorization to communicate with you via email" but also "[b]y providing the last four digits of your SSN to access the attached PDF document, you confirm your authorization for [Defendant] to communicate with you via email." Ex. K to Keshavarz Decl. at 1, ECF No. 67-11 ("Initial Email"). The attachment to the initial email stated, *inter alia*, "[c]urrently, you are approved for a greatly reduced and discounted balance as well as a reduced interest rate program. Both options have significant financial benefits for you. If these options are not readily affordable, [Defendant] will work with you on a repayment plan that works within your budget." *Id.* at 2.

Defendant then sent Ms. Rivera a letter postmarked May 25, 2016.[2] Pl. St. ¶ 62. The May 25, 2016 letter stated, "Again, we will accept an arrangement of your choosing that will enable you to successfully resolve your debt in an amicable and affordable manner. This will allow you the time that you need to pay within your financial means until you are ready to reduce your debt through a discounted balance or a reduction of your current interest rate to .001%." Ex. M to Keshavarz Decl., ECF No. 67-13 ("May 25, 2016 Letter"). A letter with identical language, dated May 24, 2016 and addressed to Ms. Vega was added to Ms. Vega's account with

---

[2] Plaintiffs also state Defendant mailed Ms. Vega a letter on May 24, 2016, a fact to which Defendant objects as being unsupported by appropriate citation to the record. Pl. St. ¶ 61; Def. Counter-Statement ¶ 61.

Defendant. Pl. St. ¶¶ 61, 63, 65. However, Defendant denies having sent such a letter to Ms. Vega. Def. Counter-Statement ¶ 61.

### C. Ms. Vega's Call to Defendant and Subsequent Payments

On July 27, 2016, Ms. Vega called Defendant and spoke with one of its agents (the "Vega Call"). Pl St. ¶ 69. Ms. Vega told the agent she had previously been paying $75.00 a month to Navient before being locked out of the account. Phone Trans. at 20:24–23:11. Defendant's agent told Ms. Vega she could continue to pay $75.00 per month on a "voluntary level," but the two different programs he was authorized by Navient to offer would cost more than $75.00 per month. Phone Trans. at 23:18–24:9. Defendant's agent further told Ms. Vega she could make payments through Defendant's website "[w]hich you won't be locked out of. . . . you can by all means go on there at any given time and make a payment." *Id.* at 25:14–20. Ms. Vega subsequently asked the agent "why are you allowing me to pay what I was paying and what Navient always refused?" to which the agent responded "[y]ou know what? I can't answer that . . . And yes, we would allow you to pay ten dollars a month if that's what you'd like to pay." *Id.* at 32:20–33:8.

Ms. Vega made a $50.00 payment to Defendant on August 12, 2016. Def. St. ¶ 37. On August 17, 2016, Plaintiffs' account was recalled from Defendant by Navient, according to the "regular recall process." Pl. St. ¶¶ 75–76. On September 16, 2016, Ms. Vega attempted to make a payment to Defendant. Def. St. ¶ 39. Ms. Vega was not allowed to make the payment as Defendant no longer held Plaintiffs' account. Pl. St. ¶¶ 79–81; Def. St. ¶ 38.

Plaintiffs filed suit against Defendant on March 7, 2017. Compl. ECF No. 1.

### D. Defendant's Collection Attempts During Pendency of Litigation

In May 2018, subsequent to Plaintiffs filing the instant suit against Defendant, Navient again placed Plaintiffs' account with Defendant. Pl. St. ¶ 91. Defendant admits if it had checked its records, it would have been aware Plaintiffs were represented by an attorney. *Id.* ¶ 95. Defendant admits it does not take any steps to check whether it has previously attempted to collect on an account. *Id.* ¶ 94. On June 1, 2018, Defendant sent initial demand letters to Plaintiffs and subsequently made calls to Plaintiffs. *Id.* ¶ 96; Def.'s Mem. in Supp. Mot. for Summ. J. at 2 n.1, ECF No. 64 ("Def. Mem.").

Plaintiffs filed an Amended Complaint on January 10, 2019, adding additional claims for relief based on the post-suit collection attempts by Defendant. Am. Compl. ¶¶ 35–43, 50, ECF No. 39. On May 29, 2020, Plaintiffs filed a motion for summary judgment as to all claims. ECF No. 59. Defendant filed a cross-motion for summary judgment as to all claims except those arising from debt collection efforts after May 2018. ECF No. 59.

## LEGAL STANDARD

Summary judgment is appropriate where the movant establishes there exists no genuine issue as to any material fact, and the movant is entitled to summary judgment as a matter of law. *Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc.*, 507 F. App'x 26, 29 (2d Cir. 2013). In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir.2004)). The movant has the burden of showing the absence of a disputed issue of material fact, after which the burden shifts to the nonmoving party to present specific evidence showing a genuine dispute. *Brown v. Eli*

*Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). "The same standard of review applies when the court is faced with a cross-motion for summary judgment. When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits and draws all reasonable inferences against the party whose motion is under consideration." *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 78 (E.D.N.Y. 2019) (Chen, J.) (internal citations and alterations omitted).

## DISCUSSION

Congress enacted the FDCPA in order to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Under the FDCPA a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The sixteen subsections of section 1692e lay out a nonexhaustive list of false, deceptive, and misleading practices banned by the FDCPA. *Id.* § 1692e(1)–(16). "A debt collection practice may violate the FDCPA even if it does not fall within any of the subsections and a single violation of section 1692e is sufficient to establish civil liability under the FDCPA." *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993) (internal citations omitted).

Additionally, under the FDCPA "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer . . ." "without the prior consent of the consumer given directly to the debt collector," except for the limited purpose of acquiring location information. 15 U.S.C. § 1692c(b). "To recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector. The

7

[FDCPA] 'is a strict liability statute, and the degree of a defendant's culpability may only be considered in computing damages.'" *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (quoting *Bentley*, 6 F.3d at 63).

The New York General Business Law declares as unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349 ("Section 349"). "Section 349(h) . . . creates a private right of action to recover actual damages . . . and allows courts to 'increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section.'" *Bueno v. LR Credit 18, LLC*, 269 F. Supp. 3d 16, 19 (E.D.N.Y. 2017) (Kuntz, J.) (quoting N.Y. Gen. Bus. Law § 349(h)). Unlike the FDCPA, Section 349 is not a strict liability statute. *Stutman v. Chem. Bank*, 731 N.E.2d 608 (N.Y. 2000). "A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Id.*

### I.   False, Deceptive, or Misleading Representations in Written and Oral Communication to Plaintiffs

Plaintiffs have alleged Defendant violated 15 U.S.C. § 1692e through misleading statements in the letters sent to Ms. Rivera, suggesting they would accept any payment plan of her choosing, and through deceptive representations to Ms. Vega on the phone. Pls.' Mem. of Law in Supp. Mot. for Summ. J. at 16–21, ECF No. 61 ("Pl. Mem."). Both parties have moved for summary judgment on both alleged violation of 15 U.S.C. § 1692e. *Id.*; Def. Mem. at 3, 8. Plaintiffs have further alleged Defendant's same statements violated Section 349. Both parties have moved for summary judgment as to the section 349 claim. Pl. Mem. at 16–21; Def. Mem. at 15–18.

### A. Claims of Deception under the FDCPA

"Courts in this Circuit evaluate claims under the FDCPA according to how the 'least sophisticated consumer' would understand the communication. *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012) (citing *Ellis*, 591 F.3d at 135). "[C]ollection notices can be deceptive if they are open to more than one reasonable interpretation, at least one of which is inaccurate." *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993). "The least sophisticated consumer test is an objective inquiry directed toward 'ensuring that the FDCPA protects all consumers, the gullible as well as the shrewd.'" *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012) (quoting *Clomon*, 988 F.2d at 1318) (internal alterations omitted). However, "FDCPA protection 'does not extend to every bizarre or idiosyncratic interpretation of a collection notice' and courts should apply the standard 'in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices.'" *Id.* at 233–34 (quoting *Clomon*, 988 F.2d at 1319).

In the Initial Email sent to Ms. Rivera, Defendant stated "[c]urrently, you are approved for a greatly reduced and discounted balance as well as a reduced interest rate program. Both options have significant financial benefits for you. If these options are not readily affordable to you, [Defendant] *will work with you on a repayment plan that works within your budget*." Initial Email at 2 (emphasis added). In their May 25, 2016 Letter, Defendant stated, "[a]gain, *we will accept an arrangement of your choosing* that will enable you to successfully resolve your debt in an amicable and affordable manner. This will allow you the time that you need to pay within your financial means until you are ready to reduce your debt through a discounted balance or a reduction of your current interest rate to .001%." May 25, 2016 Letter (emphasis added).

During the July 27, 2018 call with Ms. Vega, Defendant's agent told her "we would allow you to pay ten dollars a month if that's what you'd like to pay." Phone Trans. at 32:20–33:8.

As neither Plaintiff even attempted to formally enter into a repayment agreement with Defendant, Defendant cannot have violated the FDCPA by not recording Plaintiffs as having entered into a payment plan. However, Plaintiffs also argue Defendant's "proposal of payment terms were per se deceptive." Pl. Mem. at 19. According to Plaintiffs "it was not that Plaintiffs sought an affordable payment plan and [Defendant] denied them, but to the contrary that [Defendant] represented to Plaintiffs that they could have a payment plan at whatever they could afford while knowing that such a payment plan would not be sufficient to keep the account from being withdrawn by Navient." *Id*. at 19–20.

The Court agrees with Plaintiffs that had Defendant known a payment plan of Plaintiffs' choosing would result in Navient withdrawing the account and continuing collection efforts against Plaintiffs, Defendant's statements would have misled the "least sophisticated consumer." *See Gabriele*, 503 F. App'x at 94 (2d Cir. 2012). However, for the purposes of this motion for summary judgment, Plaintiffs have not shown Defendant knew a payment plan, outside of the two plans authorized by Navient, would be insufficient to keep the account from being withdrawn by Navient. Plaintiffs have shown only the withdrawal of the account was determined by Navient's parameters. Pl. St. ¶ 78. Indeed, Defendant's agent suggested Defendant may have believed a partial payment would allow Defendant to keep Plaintiffs' account. *Id.* ¶ 87; *see also* Def.'s Mem. of Law in Opp'n to Pls.' Mot. for Summ. J. at 11, ECF No. 74 (suggesting the account would be withdrawn after a period of six months regardless of what payments were made).

10

As a genuine dispute of material fact exists regarding Defendant's knowledge of Navient's parameters for withdrawing accounts, summary judgement is inappropriate. Both parties' motions for summary judgment regarding the written and oral communications with Plaintiffs are denied.

### B. Claims of Deception Under N.Y. Gen. Bus. Law § 349

For similar reasons, the Court also denies both parties motions for summary judgment under section 349. A claim under section 349 requires a plaintiff to show three elements: "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). The first element, "[c]onsumer-oriented conduct does not require a repetition or pattern of deceptive behavior. . . . Plaintiff, thus, need not show that the defendant committed the complained-of acts repeatedly—either to the same plaintiff or to other consumers—but instead must demonstrate that the acts or practices have a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995). For the second element under Section 349, New York courts have determined, "[d]eceptive practices are acts which are dishonest or misleading in a material respect." *Spagnola*, 574 F.3d at 74 (internal quotations omitted). Specifically, representations or omission are prohibited if they are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 745. Finally, harms such as "annoyance, harassment, time, frustration, anger, and anxiety" may satisfy the third required element under Section 349. *Friedman v. Maspeth Fed. Loan & Sav. Ass'n*, 30 F. Supp. 3d 183, 195 (E.D.N.Y. 2014) (Weinstein, J.) (citation omitted).

Drawing all inferences in favor of Defendant, Plaintiffs "have satisfied the threshold test in that the acts they complain of are consumer-oriented in the sense that they potentially affect similarly situated consumers." *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 745. Despite Defendant's statements to the contrary, Def. Mem. at 16, it is evident from the record Defendant, as part of its regular course of business, contacted third parties, sent form letters, and failed to verify accounts. *See* Def. Counter-Statement ¶ 8 (in March 2016, Defendant had over 100,000 accounts); Pl. St ¶¶ 11 (describing Defendant's typical procedures), 13–14 (Defendant's practice of collecting third party numbers), 67 (Defendant's practice of offering to consumers a "repayment plan that works within your budget"), 92–94 (Defendant's practice of not verifying status of accounts placed with it), 96 (Defendant's mailed second copy of the initial demand letter, demonstrating it was a form letter).

Plaintiffs have established they experienced harm, in the form of "frustration, anger, and anxiety" as required by Section 349. *See Friedman*, 30 F. Supp. 3d at 195. Specifically, Ms. Vega described herself as feeling "violated because I genuinely thought it was over." Aff. of Jeanette Vega ¶ 4, Ex. W to Keshavarz Decl., ECF No. 71-23. Ms. Rivera has affirmed she was "angry" and the actions of Defendant were "stressful." Aff. of Diandra Rivera ¶ 3, Ex. V to Keshavarz Decl., ECF No. 71-22. Defendant takes the position Ms. Rivera's late response to a request for admission under Fed. R. Civ. P. 36(a) requires the following points to be admitted: "Rivera is not seeking emotion distress damages" and "Rivera is not seeking actual damages." Def. St. ¶¶ 40–41. The Court disagrees. Defendant was afforded an opportunity to press for this admission before the Honorable Magistrate Judge Robert M. Levy and demurred. ECF No. 22.[3] Moreover, even if the request had been deemed admitted against Ms. Rivera, the Court would

---

[3] Defendant moved to have the request admitted against Ms. Rivera on January 9, 2018, ECF No. 15, however, the Honorable Magistrate Judge Levy terminated the motion on January 22, 2018, ECF Entry January 22, 2018.

permit withdrawal of the admission under Fed. R. Civ. P. 36(b) as "there is no question that permitting withdrawal and amendment of the deemed admissions would 'promote the presentation of the merits of the action,' as the deemed admissions go to the 'ultimate issues' in this litigation." *River Light V, L.P. v. Lin & J Int'l, Inc.*, 299 F.R.D. 61, 64 (S.D.N.Y. 2014) (Cote, J.) (quoting Fed. R. Civ. P. 36(b) (internal quotations omitted).

Regarding the second element, if Defendant knew a payment plan of Plaintiffs' choosing would result in Navient withdrawing their account and continuing collection efforts against Plaintiffs, Defendant's statements would "likely [] mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 745. However, for the reasons enumerated above, a genuine dispute of material fact exists regarding Defendant's knowledge of Navient's parameters for withdrawing accounts. Therefore, both parties' motions for summary judgment under Section 349 are denied.

## II. Phone Calls to Third Party Family Members of Plaintiff

Plaintiffs also move for summary judgment under 15 U.S.C. §§ 1692b, 1692c(b), arguing Defendant's calls to Ms. Muniz and Mr. Fillon violated the FDCPA prohibition against contacting third parties. Pl. Mem. at 12–16. Plaintiffs further take the position the calls to Plaintiffs' relatives were misleading because they created the impression Defendant was permitted to make calls to third parties such as Ms. Muniz and Mr. Fillon. *Id.* at 13. Defendant moves for summary judgment, arguing the calls to Ms. Muniz and Mr. Fillon were solely for the purpose of obtaining location information, namely Plaintiffs' contact information. Def. Mem. at 5–7.

### A. Impermissible Third-Party Calls

15 U.S.C. § 1692c(b) prohibits debt collectors from contacting third parties with a limited exception allowing for collection of location information, such as a phone number. 15 U.S.C. § 1692b provides "[t]he very limited authorized contact with third parties allowed under the statute." *Halberstam v. Glob. Credit & Collection Corp.*, 15-CV-5696, 2016 WL 154090, at *2 (E.D.N.Y. Jan. 12, 2016) (Cogan, J.). Under section 1692b, "[a]ny debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall . . . identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer; [and] not state that such consumer owes any debt." 15 U.S.C. § 1692b.

Defendant argues its calls to Plaintiffs' family members were exempt from section 1692c(b) as they sought permissible location information for Ms. Rivera. Def. Mem. at 5; *see also* Phone Trans. at 3:25–4:2 ([Defendant:] "Do you have a better contact number for her?"). However, Defendant had confirmed it possessed Ms. Rivera's phone number at 2:44 P.M. before it called Ms. Muniz at 3:23 P.M. and Mr. Fillon at 3:28 P.M. Pl. St. ¶ 34; Ex. H to Keshavarz Decl. at 124, ECF No. 67-8. A debt collector who has already confirmed its contact information for a debtor may not defend an otherwise impermissible call to a third party behind the shield of section 1692b. *See Halberstam*, 2016 WL 154090, at *2 ("I reject the application of § 1692b(1) to the facts of this case . . . . [T]here was no need for [defendant] to confirm contact information. The third party who answered the telephone did it for him when he said, '[debtor] is not yet in.' At that point, [defendant] knew he had the right contact information."). By contacting Mr. Fillon and Ms. Muniz, after Defendant had confirmed Ms. Rivera's contact information, Defendant ran afoul of section 1692c(b).

14

Defendant then compounded its error by failing to object when Mr. Fillon stated "Okay. I'll get in contact with her and I'll tell her." Phone Trans. at 5:7–9. Indeed, Defendant's response of "[a]ll right. Thank you," *id.* at 5:9–11, is demonstrative of its true intent "to obtain a debtor-initiated contact, something the debtor may or may not have done on his own, or in response to a dunning letter with full disclosures." *Halberstam*, 2016 WL 154090, at *3. "[O]ne who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line," *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) (internal quotation omitted), as Defendant did here.

Therefore, Plaintiffs' motion for summary judgment under 15 U.S.C. § 1692c(b) for the third-party calls made by Defendant is granted and Defendant's cross-motion is denied.

### B. Alleged Misleading Statements and Threats During Third-Party Calls

Plaintiffs also move for summary judgment arguing the Muniz and Fillon calls violated the FDCPA's prohibition against false, deceptive, and misleading statements under section 1692e and the prohibition against making threats, which are not intended of being taken under section 1692e(5). Pl. Mem. at 12–16. Defendant cross moves for summary judgment. Def. Mem. at 5–8. For the reasons outlined below, the Court finds a genuine dispute of material fact exists regarding these issues and denies both motions for summary judgment.

First, the parties dispute the contents of the call between Defendant and Ms. Muniz, each citing to admissible evidence in the record to support their version of events. *Compare* Def. St. ¶ 18, *with* Muniz Aff. ¶ 3 (citing to attached transcript). According to the affidavit of Ms. Muniz, Defendant stated Ms. Rivera was "in deep trouble," which made Ms. Muniz "very nervous and scared." Muniz Aff. ¶ 3 (citing to attached transcript). Such a statement to a third party would be directly prohibited by 15 U.S.C. § 1692c(b). However, Defendant has presented

15

recordings, which it submits represent the entirety of the Muniz Call, in which no such statement by Defendant appears. Def. St. ¶ 18. At the summary judgment stage "the court may not make credibility determinations or weigh the evidence." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)). As both parties have supplied admissible, but largely contradictory evidence regarding the Muniz Call, there is a genuine dispute of material fact. Therefore, the Court denies both motions for summary judgment regarding alleged threats and misstatements in Defendant's call to Ms. Muniz.

Additionally, during the Fillon Call, Plaintiffs argue Defendant affirmatively misrepresented how it acquired Mr. Fillon's number. Pl. Reply at 4. After a thorough review of the record, the Court concludes Defendant's statement to Mr. Fillon that Ms. Rivera "has this number down as a reference in order to get in contact with her," may have been misleading as Ms. Rivera may not have provided Mr. Fillon's number to Navient for this purpose. Phone Trans. at 4:10–12. However, drawing all inferences in favor of the non-moving party, neither party has established they are entitled to summary judgment on this point. The Court denies both motions for summary judgment regarding alleged misstatements in Defendant's call to Mr. Fillon.

### C. Alleged Impressions of Third-Party Calls

Plaintiffs also argue the Fillon and Muniz Calls were per se misleading, stating they created the impression in Plaintiffs that Defendant was entitled to call third party family members. Pl. Mem. at 12–14. The Court disagrees. Defendant's calls to Fillon and Muniz could not have created a *false* impression that Defendant was allowed to make the third party calls because, as far as Plaintiffs were aware, Defendant was entitled to make the calls to seek

16

Plaintiffs' contact information. 15 U.S.C. § 1692b. Because Plaintiffs did not know Defendant already had their contact information, Plaintiffs had no way of knowing Defendant's calls to Mr. Fillon and Ms. Muniz were *in fact* not covered under the exception of section 1692b. As the calls could not therefore have created a false impression in Plaintiffs, the Court grants summary judgment to Defendant on these claims.

## III.  Collection Efforts During Pendency of Litigation

Under the FDCPA, a debt collector may not contact a consumer "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address." 15 U.S.C. § 1692c(a)(2). When Defendant was reassigned Plaintiffs' account by Navient in May 2018, it admits it could have checked its records and determined Plaintiffs were represented by counsel. Pl. St. ¶¶ 91, 95; Def. Counter-Statement ¶¶ 91, 95. Defendant further concedes it contacted Plaintiffs and made collection efforts between May 2018 and November 2018, during the pendency of this litigation. Pl. St. ¶¶ 91–98; Def. Mem. at 2 n.1; Def. Counter-Statement ¶¶ 91–98.

As Defendant admits to contacting Plaintiffs and making collection efforts when it could "readily ascertain" Plaintiffs were represented by counsel, Plaintiffs have established they are entitled to judgment as a matter of law. Defendant's routine failure to prevent this type of contact with consumers is the exact behavior the FDCPA seeks to prevent. *See* 15 U.S.C. § 1692(e); Pl. St. ¶ 92–95. The Court grants Plaintiffs' motion for summary judgment with respect to Defendant's violations of 15 U.S.C. § 1692c(a)(2) between May and November 2018.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment, ECF No. 59, is GRANTED in part and DENIED in part, while Plaintiffs' motion for summary judgment, ECF

17

No. 60, is GRANTED in part and DENIED in part. The remaining issues to be determined by the trier of fact are Plaintiffs' claims under: (1) 15 U.S.C. § 1692e and Section 349, for misleading statements in oral and written communication to Plaintiffs; and (2) 15 U.S.C. § 1692e, for misleading oral statements made to Mr. Fillon and Ms. Muniz.

**SO ORDERED.**

s/ WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 25, 2020
      Brooklyn, New York